IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 13 |
| | : | |
| IAN LEE LAMBERT, | : | CASE NO. 17-58569-JWC |
| | : | |
| Debtor. | : | |
| | : | |
| | : | |
| TRUIST BANK, SUCCESSOR BY MERGER TO SUNTRUST BANK, | : | CONTESTED MATTER |
| | : | |
| Movant. | : | |
| | : | |
| vs. | : | |
| IAN LEE LAMBERT, | : | |
| NANCY J. WHALEY, Trustee | : | |
| | : | |
| Respondents. | : | |

## NOTICE OF MOTION FOR RELIEF FROM AUTOMATIC STAY

Movant has filed documents with the court to obtain relief from the automatic stay.

**YOUR RIGHTS MAY BE AFFECTED. You should read these documents carefully and discuss them with your attorney, if you have one in this bankruptcy case. If you do not have an attorney, you may wish to consult one.**

If you do not want the court to grant relief from the automatic stay or if you want the court to consider your views on the motion, then you or your attorney shall attend the hearing scheduled to be held on

**April 28, 2020 at 9:30a.m. at the United States Bankruptcy Court, 75 Ted Turner Drive S.W., Courtroom 1203, Atlanta, Georgia 30303.**

**\*\*\*Given the current public health crisis, hearings may be telephonic only. Please check the "Important Information Regarding Court Operations During COVID-19 Outbreak" tab at the top of the GANB Website prior to the hearing for instructions on whether to appear in person or by phone.\*\*\***

If you or your attorney does not take these steps, the court may decide that you do not oppose the relief sought in the motion and may enter an order granting relief.

You may also file a written response to the pleading with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how and on whom (including addresses) you served the response. Send your response so that it is received by the Clerk at least two business days before the hearing.

If a hearing on the motion for relief from the automatic stay cannot be held within thirty (30) days, Movant waives the requirement for holding a preliminary hearing within thirty days of filing the motion and agrees to a hearing on the earliest possible date. Movant consents to the automatic stay remaining in effect until the Court orders otherwise.

The address of the Clerk's Office is: Clerk, 75 Ted Turner Drive S.W., Suite 1340, Atlanta, Georgia 30303.  You must also send a copy of your response to the undersigned at the address stated below.

Dated this:   4/3/2020

/s/Ciro A Mestres

Ciro A Mestres, GA BAR NO. 840253
Attorney for Movant
McCalla Raymer Leibert Pierce, LLC
1544 Old Alabama Road
Roswell, Georgia 30076
678-281-6516
Ciro.Mestres@mccalla.com

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 13 |
| | ) | |
| IAN LEE LAMBERT, | ) | CASE NO. 17-58569-JWC |
| | ) | |
| Debtor. | ) | |
| | ) | |
| TRUIST BANK, SUCCESSOR BY MERGER TO | ) | CONTESTED MATTER |
| SUNTRUST BANK, | ) | |
| | ) | |
| Movant. | ) | |
| | ) | |
| vs. | ) | |
| IAN LEE LAMBERT, | ) | |
| NANCY J. WHALEY, Trustee | ) | |
| | ) | |
| Respondents. | | |

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY

COMES NOW Movant and shows this Court the following:

1.

This is a Motion under Section 362(d) of the Bankruptcy Code for relief from the automatic stay for all purposes allowed by law and the contract between the parties, including, but not limited to, the right to foreclose on certain real property.

2.

Movant is the servicer of a loan secured by certain real property in which Debtor claims an interest. Said real property is security for a promissory note, and is commonly known as 2643 Spencers Trace Ne, Marietta, Georgia 30062 (the "Property").

3.

4.

Debtor has defaulted in making payments which have come due since this case was filed. As of March 23, 2020, Debtor is delinquent for three (3) payments of $1,438.02 each (January 2020 – March 2020), less a suspense balance of $272.53, for a total post-petition arrearage of $4,041.53 pursuant to the terms of the Note.

As of March 23, 2020, the unpaid principal balance is $167,753.22, and interest is due thereon in accordance with the Note.

5.

Because of Debtor's default and clear inability to make all required payments, Movant is not adequately protected and shows that there is cause for relief from the automatic stay.

6.

Because the Security Deed so provides, Movant is entitled to its attorney's fees.

7.

Movant requests it be permitted to contact the Debtor via telephone or written correspondence regarding potential loss mitigation options pursuant to applicable non-bankruptcy law, including loan modifications, deeds in lieu of foreclosure, short sales and/or any other potential loan workouts or loss mitigation agreements.

WHEREFORE, Movant prays (1) for an Order modifying the automatic stay, authorizing Movant, its successors and assigns, to proceed with the exercise of its private power of sale and to foreclose under its Security Deed and appropriate state statutes; (2) for an award of reasonable attorney's fees; (3) that Movant, at its option, be permitted to contact the Debtor via telephone or written correspondence regarding potential loss mitigation options pursuant to applicable non-bankruptcy law, including loan modifications, deeds in lieu of foreclosure, short sales and/or any

other potential loan workouts or loss mitigation agreements; (4) for waiver of Bankruptcy Rule

4001 (a)(3); and (5) for such other and further relief as is just and equitable.

/s/Ciro A Mestres
Ciro A Mestres, Georgia BAR NO. 840253
Attorney for Movant
McCalla Raymer Leibert Pierce, LLC
1544 Old Alabama Road
Roswell, Georgia 30076
678-281-6516
678-281-6516
Ciro.Mestres@mccalla.com

BANKRUPTCY CASE NO. 17-58569-JWC

CHAPTER 13

CERTIFICATE OF SERVICE

I, Ciro A Mestres, of McCalla Raymer Leibert Pierce, LLC, 1544 Old Alabama Road, Roswell, Georgia 30076-2102, certify:

That on the date below, I served a copy of the within NOTICE OF ASSIGNMENT OF HEARING, together with the MOTION FOR RELIEF FROM THE AUTOMATIC STAY filed in this bankruptcy matter on the following parties at the addresses shown, by regular United States Mail, postage prepaid, unless another manner of service is expressly indicated:

Ian Lee Lambert
2748 Saddle Ridge Lake Drive
Marietta, GA 30062

Howard P. Slomka                    *(served via ECF notification)*
Slipakoff & Slomka, PC
Suite 2100
3350 Riverwood Parkway
Atlanta, GA 30339

Nancy J. Whaley, Trustee            *(served via ECF notification)*
Suite 120, Suntrust Garden Plaza
303 Peachtree Center Avenue
Atlanta, GA 30303

I CERTIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Executed on:    4/3/2020        By: */s/Ciro A Mestres*
                (date)              Ciro A Mestres Georgia BAR NO. 840253
                                    Attorney for Movant

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

In re:

Chapter 13

IAN LEE LAMBERT,

Case No. 17-58569-JWC

Debtor.

## DECLARATION IN SUPPORT OF
## MOTION FOR RELIEF FROM AUTOMATIC STAY

I _Sara Valent_, being:

1.     I am a/an _AVP_ of Truist Bank, successor by merger to Sun Trust Bank ("Truist") and am authorized to sign this declaration on behalf of Truist Bank. This declaration is provided in support of the Motion for Relief from Stay (the "Motion") filed contemporaneously herewith.

2.     As part of my job responsibilities for Truist, I have personal knowledge of and am familiar with the types of records maintained by Truist in connection with the loan that is the subject of the Motion (the "Loan") and the procedures for creating those types of records. I have access to and have reviewed the business records and files of Truist that pertain to the Loan and extensions of credit given to the Debtor(s) concerning the property securing such Loan.

3.     The information in this declaration is taken from Truist business records regarding the Loan. The records are: (a) made at or near the time of the occurrence of the matters recorded by persons with personal knowledge of the information in the business record, or from information transmitted by persons with personal knowledge; and (b) kept in the course of Truist's regularly conducted business activities. It is the regular practice of Truist to create and maintain such records.

4.      The Debtor(s) Ian Lambert has executed and delivered or is otherwise obligated with respect to the attached Promissory Note dated October 24, 2014 (the "Note"). Pursuant to the attached Security Deed, all obligations of the Debtor(s) under and with respect to the Note and the Security Deed are secured by the property referenced in the Motion.

5.      As of March 23, 2020, there are one or more defaults in paying pre-petition arrears and/or post-petition amounts due with respect to the Note. Such default is a basis under the Security Deed for the right to foreclose on the property.

6.      As of March 23, 2020, the unpaid principal balance of the Note is $167,753.22.

7.      The following chart sets forth those post-petition payments, due pursuant to the terms of the Note, that have been missed by the Debtor(s) as of March 23, 2020:

| Number of Missed Payments | From | To | Principal and Interest | Escrow (if applicable) [1] | Monthly Payment Amount | Total Amounts Missed (Number of Missed Payments multiplied by Monthly Payment Amount) |
|---|---|---|---|---|---|---|
| 3 | 1/01/2020 | 03/01/2020 | $910.51 | $527.51 | $1,438.02 | $4,314.06 |
| Less post-petition partial payments (suspense balance) | | | | | | ($272.53) |

Total          $4,041.53

[1] The total of missed post-petition payments for this loan include any missed escrow payments. Such missed escrow payments include amounts assessed for taxes and insurance and any previously assessed escrow shortage amount (if applicable). To avoid duplication, post-petition advances (if any) made for insurance, real estate taxes, or similar charges are not listed separately to the extent such advances would have been paid from the missed escrow payments. As part of the next annual RESPA analysis, SunTrust will determine whether the escrow payments assessed to the debtor (including the missed escrow payments) result in a projected escrow shortage or overage. All rights are hereby reserved to assert or request any escrow amounts in accordance with RESPA and the total post-petition arrearage/delinquency is qualified accordingly.

8.     Upon information and belief, as of March 23, 2020 the unpaid amount of the prepetition arrearage due is $0.00[2].

9.     As of the March 23, 2020, the total post-petition arrearage/delinquency and amount necessary to cure the post-petition default alleged in the Motion is $5,072.53, consisting of (i) the foregoing total of missed post-petition payments in the amount of $4,041.53, plus (ii) the post-petition fees and advances for taxes and insurance in the amount of $1,031.00.

10.    The following documents are attached as exhibits and incorporated herein by reference:

(a)   Attached hereto as Exhibit A is a true and correct copy of the Note.

(b)   Attached hereto as Exhibit B is a true and correct copy of the Security Deed.

(c)   Attached hereto as Exhibit C is a true and correct copy of the assignment.

(d)   Attached hereto as Exhibit D is a payment history for the period since the date of the first pre-petition or post-petition default that has not been cured.


I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

EXECUTED this **31st** day of **March**, 20 **20** in the City of **Richmond** State of **Virginia**

_____
Signature

---

[2] This amount reflects amounts due and not yet received from Chapter 13 trustee distribution on the applicable proof of claim for pre-petition arrears. For Chapter 7, this amount reflects the arrears due at the time of filing. Additional information regarding this amount is available upon request.

EXHIBIT A

*Lambert*

## NOTE

FHA Case No

LAMBERT
Lou
MIN

| OCTOBER 24, 2014 | MARIETTA | GEORGIA |
| [Date] | [City] | [State] |

2643 SPENCERS TRACE NE, MARIETTA, GA 30062
[Property Address]

### 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means PRIMARY RESIDENTIAL MORTGAGE, INC. and its successors and assigns.

### 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of ONE HUNDRED EIGHTY-FIVE THOUSAND EIGHTY-FIVE AND 00/100 Dollars (U.S. $185,085.00), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of FOUR AND ONE-FOURTH percent (4.250%) per year until the full amount of principal has been paid.

### 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

### 4. MANNER OF PAYMENT

#### (A) Time

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on DECEMBER 1, 2014. Any principal and interest remaining on the first day of NOVEMBER, 2044, will be due on that date, which is called the "Maturity Date."

#### (B) Place

Payment shall be made at 1480 NORTH 2200 WEST, SALT LAKE CITY, UT 84116 or at such place as Lender may designate in writing by notice to Borrower.

#### (C) Amount

Each monthly payment of principal and interest will be in the amount of U.S. $910.51. This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

#### (D) Allonge to this Note for Payment Adjustments

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box.]

☐ Graduated Payment Allonge      ☐ Growing Equity Allonge      ☐ Other [Specify] _____

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

## 6. BORROWER'S FAILURE TO PAY

### (A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of 15 calendar days after the payment is due, Lender may collect a late charge in the amount of FOUR percent (4.000%) of the overdue amount of each payment, unless such amount exceeds the maximum amount allowed by applicable state law, in which case the Lender may collect the maximum amount allowed by such law.

### (B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances, regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

### (C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

- BORROWER -    IAN  LAMBERT  - DATE -        10/24/14

[Sign Original Only]

MORTGAGE LOAN ORIGINATOR STEPHEN DOUGLAS
NATIONWIDE MORTGAGE LICENSING SYSTEM AND REGISTRY IDENTIFICATION NUMBER
MORTGAGE LOAN ORIGINATION COMPANY PRIMARY RESIDENTIAL MORTGAGE, INC.
NATIONWIDE MORTGAGE LICENSING SYSTEM AND REGISTRY IDENTIFICATION NUMBER

Pay to the order of:

SUNTRUST MORTGAGE, INC.

Without recourse

Primary Residential Mortgage, Inc.

ALYSSA LOUGHRIN
DIRECTOR OF POST-CLOSING

WITHOUT RECOURSE, PAY TO THE ORDER OF

SUNTRUST MORTGAGE, INC.

MARY KATHRYN BRIZENDINE, Vice President

FHA Multistate Fixed Rate Note - 12/13

EXHIBIT B

Georgia Intangible Tax Paid $556.50

*Rebecca Keaton*

REBECCA KEATON
CLERK OF SUPERIOR COURT Cobb Cty. GA.

Record and Return To
Morris|Schneider|Wittstadt
Attorneys At Law
1730 Roswell Road
Suite 25
Marietta, GA 30062

Prepared By
CAROL SHEFFIELD
PRMI INC.
1480 NORTH 2200 WEST
SALT LAKE CITY, UTAH 84116
800-255-2792

When Recorded Mail To
PRIMARY RESIDENTIAL
MORTGAGE, INC.
1480 NORTH 2200 WEST
SALT LAKE CITY, UT 84116
ATTN FINAL DOCS TEAM
800-255-2792

[Space Above This Line For Recording Data]

**SECURITY DEED**

FHA Case No _____

LAMBERT
Loan
MIN
MERS Phone
PIN

THIS SECURITY DEED ("Security Instrument") is given on OCTOBER 24, 2014 The grantor is IAN LAMBERT ("Borrower") This Security Instrument is given to Mortgage Electronic Registration Systems, Inc ("MERS") (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as grantee MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P O Box 2026, Flint, Michigan 48501-2026, telephone (888) 679-MERS PRIMARY RESIDENTIAL MORTGAGE, INC., is which is organized and existing under the laws of NEVADA, and whose address is 1480 NORTH 2200 WEST, SALT LAKE CITY, UT 84116 ("Lender") Borrower owes Lender the principal sum of ONE HUNDRED EIGHTY-FIVE THOUSAND EIGHTY-FIVE AND 00/100 Dollars (U S $185,085.00) This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on NOVEMBER 1, 2044 This Security Instrument secures to Lender (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note, (b) the payment of all other sums, with interest, advanced under Paragraph 7 to protect the security of this Security Instrument, and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note For this purpose, Borrower does hereby grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS, with power of sale, the following described property located in COBB County, Georgia
LEGAL DESCRIPTION/EXHIBIT A ATTACHED HERETO AND MADE A PART HEREOF
which has the address of 2643 SPENCERS TRACE NE, MARIETTA, Georgia 30062 ("Property

FHA Georgia Security Deed - 12/13

Page 1 of 10

Address")

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property All replacements and additions shall also be covered by this Security Instrument All of the foregoing is referred to in this Security Instrument as the "Property " Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property

Borrower and Lender covenant and agree as follows

UNIFORM COVENANTS.

1    Payment of Principal, Interest and Late Charge
Borrower shall promptly pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note

2    Monthly Payment of Taxes, Insurance and Other Charges
Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for

(a)  taxes and special assessments levied or to be levied against the Property,

(b)  leasehold payments or ground rents on the Property, and

(c)  premiums for insurance required under Paragraph 4  In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either

(i)  a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or

(ii)  a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds "

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate

Settlement Procedures Act of 1974, 12 U S C Sec 2601 et seq and implementing regulations, 12 C F R Part 1024, as they may be amended from time to time (RESPA), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall deal with the excess funds as required by RESPA If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument If Borrower tenders to Lender the full payment of all such sums, Borrowers account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c)

3    Application of Payments
All payments under Paragraphs 1 and 2 shall be applied by Lender as follows

* First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium,

* Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required,

* Third, to interest due under the Note,

* Fourth, to amortization of the principal of the Note, and

* Fifth, to late charges due under the Note

4    Fire, Flood, and Other Hazard Insurance
Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance This insurance shall be maintained in the amounts and for the periods that Lender requires Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary All insurance shall be carried with companies approved by Lender The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender

In the event of loss, Borrower shall give Lender immediate notice by mail Lender may make proof of loss if not made promptly by Borrower Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly All or any part of the insurance proceeds may be applied by Lender, at its option, either

(a)  to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in Paragraph 3, and then to prepayment of principal, or

(b)  to the restoration or repair of the damaged Property Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in Paragraph 2, or change the amount of such payments Any excess insurance proceeds over an

19

amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser

**5    Occupancy, Preservation, Maintenance and Protection of the Property, Borrower's Loan Application, Leaseholds**

Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control  Borrower shall notify Lender of any extenuating circumstances  Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted  Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default  Lender may take reasonable action to protect and preserve such vacant or abandoned property  Borrower shall also be in default if borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence  If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease  If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing

**6    Condemnation**

The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument  Lender shall apply such proceeds to the reduction of the Indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in Paragraph 3, and then to prepayment of principal  Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in Paragraph 2, or change the amount of such payments  Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto

**7    Charges to Borrower and Protection of Lender's Rights in the Property**

Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2  Borrower shall pay these obligations on time directly to the entity which is owed the payment  If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments

If Borrower fails to make these payments or the payments required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2

Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower and be secured by this Security Instrument  These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower

(a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender,

(b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lenders opinion operate to prevent the enforcement of the lien, or

(c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument  If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien  Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice

**8    Fees**

Lender may collect fees and charges authorized by the Secretary

**9    Grounds for Acceleration of Debt**

(a) **Default**  Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument

(b) **Sale Without Credit Approval**  Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St Germain Depository Institutions Act of 1982, 12 U S C  1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary

(c) **No Waiver**  If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events

(d) **Regulations of HUD Secretary**  In many circumstances regulations issued by the Secretary will limit Lender rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid  This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary

(e) **Mortgage Not Insured**  Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date

FHA Georgia Security Deed - 12/13

Page  5  of 10

hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary

10 **Reinstatement**

Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument This right applies even after foreclosure proceedings are instituted To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorney's fees and expenses properly associated with the foreclosure proceeding Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full However, Lender is not required to permit reinstatement if

(i)  Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding,

(ii)  reinstatement will preclude foreclosure on different grounds in the future, or

(iii)  reinstatement will adversely affect the priority of the lien created by this Security Instrument

11 **Borrower Not Released. Forbearance by Lender Not a Waiver**

Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrowers successors in interest Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy

12 **Successors and Assigns Bound; Joint and Several Liability, Co-Signers**

The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of Paragraph 9(b)  Borrowers covenants and agreements shall be joint and several Any Borrower who co-signs this Security Instrument but does not execute the Note

(a)  is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument,

(b)  is not personally obligated to pay the sums secured by this Security Instrument, and

(c)  agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent

13 **Notices**

Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender Any

notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph

14  **Governing Law; Severability**

This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision To this end, the provisions of this Security Instrument and the Note are declared to be severable

15  **Borrower's Copy**

Borrower shall be given one conformed copy of the Note and of this Security Instrument

16  **Hazardous Substances**

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property  Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental law  The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property

Borrower shall promptly give Lender written notice of any Investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge  If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental law and the following substances  gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials  As used in this Paragraph 16, "Environmental law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows

17  **Assignment of Rents**

Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents  However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower  This assignment of rents constitutes an absolute assignment and not an assignment for additional security only

If Lender gives notice of breach to Borrower  (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument, (b) Lender shall be entitled to collect and receive all of the rents of the Property, and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its right under this Paragraph 17

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower However, Lender or a judicially appointed receiver may do so at any time there is a breach Any application of rents shall not cure or waive any default or invalidate any other rights or remedy of Lender This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full

18  Foreclosure Procedure

If Lender requires immediate payment in full under Paragraph 9, Lender may invoke the power of sale granted by Borrower and any other remedies permitted by applicable law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 18, including, but not limited to, reasonable attorney's fees and costs of title evidence

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale to Borrower in the manner provided in Paragraph 13 and shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place under the terms designed in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such a conveyance The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorney's fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by law.

If the property is sold pursuant to this Paragraph 18, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with applicable law

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U S C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law

19  Release

Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument without charge to Borrower Borrower shall pay any recordation costs

20  Waiver of Homestead

Borrower waives all rights of homestead exemption in the Property

FHA Georgia Security Deed - 12/13

Page 8 of 10

21  **Assumption not a Novation**

Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation

22  **Security Deed**

This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby

23  **Riders to this Security Instrument**

If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument [Check applicable box(es)]

☐ Condominium Rider             ☐ Growing Equity Rider        ☐ Adjustable Rate Rider
☐ Planned Unit Development Rider ☐ Graduated Payment Rider
☒ Other [specify] WAIVER OF BORROWER'S RIGHTS

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument

- BORROWER -   IAN LAMBERT - DATE -

Signed, sealed and delivered in the presence of

Unofficial Witness

Official Witness

Notary Public, COBB County

FHA Georgia Security Deed - 12/13                    Page 9 of 10

_____ [Space Below This Line For Acknowledgment] _____

STATE OF GEORGIA

COUNTY OF COBB

This record was acknowledged before me on __10 −24 −14.__ by IAN LAMBERT, who
proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me
_____ Personally Known

or
___✔ Produced Identification __Ga   DL__
Type and # of ID (last 4 digits) __Ga   DL__
ID Expiration Date __12 −29 −15__

J BAREL
NOTARY
My Comm Expires
October 5 2015
PUBLIC
COBB COUNTY, GEORGIA

_____
Notary Public
COBB COUNTY
STATE OF GEORGIA
My Commission Expires __10 − 5 −15.__

MORTGAGE LOAN ORIGINATOR STEPHEN DOUGLAS
NATIONWIDE MORTGAGE LICENSING SYSTEM AND REGISTRY IDENTIFICATION NUMBER

MORTGAGE LOAN ORIGINATION COMPANY PRIMARY RESIDENTIAL MORTGAGE, INC.
NATIONWIDE MORTGAGE LICENSING SYSTEM AND REGISTRY IDENTIFICATION NUMBER

FHA Georgia Security Deed - 12/13                    Page 10 of 10

## EXHIBIT "A"

All that tract or parcel of land lying and being in Land Lot 551 of the 16th District, 2nd Section, Cobb County, Georgia, being Lot 29 of Holly Springs East Subdivision, per plat thereof recorded in Plat Book 67, Page 166, Cobb County, Georgia Records, which recorded plat is incorporated herein by reference and made a part of this description

Parcel ID Number

## GEORGIA FORECLOSURE DISCLOSURE

### Made Pursuant to Ga. Comp. R. & Regs. r. 80-11-1-.01(8)

LNDBF
Loan #
MIN

Date OCTOBER 24, 2014

Lender PRIMARY RESIDENTIAL MORTGAGE, INC.

Borrower(s) IAN LAMBERT

Property Address 2543 SPENCERS TRACE NE
MARIETTA, GA 30062

O.C.G.A Section 7-1-1014(3) requires that we inform you that if you fail to meet any condition or term of the documents that you sign in connection with obtaining a mortgage loan you may lose the property that serves as collateral for the mortgage loan through foreclosure.

By signing below, you acknowledge receipt of this Disclosure

BORROWER    IAN LAMBERT    DATE    10/24/14

Record and Return To
Morris|Schneider|Witstadt
Attorneys At Law
3730 Roswell Road
Suite 25
Marietta, GA 30062

After Recording Return To
PRIMARY RESIDENTIAL MORTGAGE,
INC.
1480 NORTH 2200 WEST
SALT LAKE CITY, UT 84116
ATTENTION FINAL DOCS TEAM

Prepared By
CAROL SHEFFIELD
PRMI INC.
1480 NORTH 2200 WEST
SALT LAKE CITY, UTAH 84116
800-255-2792

## WAIVER OF BORROWER'S RIGHTS

LAMBERT
Loan
MIN
Case

GRANTOR IAN LAMBERT

LENDER PRIMARY RESIDENTIAL MORTGAGE, INC.

DATE OF SECURITY DEED OCTOBER 24, 2014

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY (1) ACKNOWLEDGES THE **RIGHT TO
ACCELERATE THE DEBT AND THE POWER OF ATTORNEY** GIVEN HEREIN TO LENDER TO SELL
THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY
JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO
BE GIVEN UNDER THE PROVISIONS HEREOF (2) **WAIVES** ANY AND ALL RIGHTS WHICH GRANTOR
MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE
UNITED STATES  THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES,
OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR
TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER,
EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED HEREOF, (3)
ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND SPECIFICALLY THIS PARAGRAPH
AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS
PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED
AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING
THIS DEED, (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR
HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A
BARGAINED FOR LOAN TRANSACTION, AND (5) AGREES THAT THE PROVISIONS HEREOF ARE
INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED

Page 1 of 1

READ AND AGREED BY GRANTOR

_____  10/24/14
- BORROWER -  IAN LAMBERT - DATE -

Signed, sealed and delivered in the presence of

_____
Unofficial Witness

_____
Notary Public

My Commission Expires  10 - 5 - 15

KEI
CLERK OF SUPERIOR COURT COBB CTY. GA.

## CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who, having been first duly sworn according to law, states under oath as follows

In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Waiver of the Borrower's Rights" by the Borrower(s), I reviewed with and explained to the Borrower(s) the terms and provisions of the Deed to Secure Debt and particularly the provisions thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under a power of sale, together with the "Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights  After said review with and explanation to Borrower(s), Borrower(s) executed the Deed to Secure Debt and "Waiver of Borrower's Rights "

Based on said review with and explanation to the Borrower(s), it is my opinion that Borrower(s) knowingly, intentionally and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure

Closing Attorney

Sworn to and subscribed before me on  10-24-14

Notary Public

My Commission Expires

TAMMY L BROWN
NOTARY
My Comm Expires
April 27, 2017
PUBLIC
PAULDING COUNTY, GEORGIA

**AGREEMENT AND PLAN OF MERGER**
**BETWEEN**
**SUNTRUST MORTGAGE, INC.**
**AND**
**SUNTRUST BANK**

This Agreement and Plan of Merger (this "Plan") is made and entered into as of the 29th day of November, 2017, between SUNTRUST MORTGAGE, INC., a Virginia corporation ("STM"), and SUNTRUST BANK, a Georgia state bank that is a member of the Federal Reserve System ("STB").

## W I T N E S S E T H:

WHEREAS, STM is a wholly owned subsidiary of STB, and STB and STM have determined that it is in the best interests of STB and STM to merge STM with and into STB.

NOW, THEREFORE, in consideration of the above premises and the mutual covenants and agreements set forth herein, the parties hereto agree as follows:

1.    Merger.  Pursuant to the provisions of Section 18(c) of the Federal Deposit Insurance Act, Section 7-1-530 of the Financial Institutions Code of Georgia and Section 13.1-716 of the Virginia Stock Corporation Act, STM shall be merged with and into STB (the "Merger").  STB shall be the surviving institution of the Merger (the "Resulting Institution") and shall operate with the name "SunTrust Bank."

2.    Effective Time of the Merger.  The Merger shall become effective on the date and at the time specified in the Articles of Merger to be filed with the State of Georgia and the State of Virginia (the "Effective Time").

3.    Location, Articles, Bylaws, Directors and Executive Officers of the Resulting Institution. At the Effective Time of the Merger:

(a)    The head office of the Resulting Institution shall be located at the head office of STB immediately prior to the Effective Time of the Merger.

(b)    The Articles of Incorporation of the Resulting Institution shall be the Articles of Incorporation of STB in effect immediately prior to the Effective Time of the Merger.

(c)    The Bylaws of the Resulting Institution shall be the Bylaws of STB in effect immediately prior to the Effective Time of the Merger.

(d)    The Board of Directors of the Resulting Institution shall be the same members of the Board of Directors of STB immediately prior to the Effective Time of the Merger and shall serve until the next annual meeting of the shareholders of the Resulting Institution or until such time as their successors have been elected and qualified.

(e)    The executive officers of the Resulting Institution shall be the same as the executive officers of STB immediately prior to the Effective Time of the Merger and shall serve until such time as their successors have been appointed.

4.    Manner of Converting Shares.

(a)    By virtue of the Merger, automatically and without any action on the part of the holder thereof, each of the shares of the capital stock of STM issued and outstanding immediately prior to the Effective Time of the Merger shall be cancelled and retired at the Effective Time, and no consideration shall be issued in exchange therefor.

(b)    Upon and after the Effective Time, each issued and outstanding share of capital stock of STB shall remain unchanged and shall continue to evidence the same number of shares of capital stock of STB.

5.    Condition Precedent to Consummation of the Merger.  Consummation of the Merger provided for herein is conditioned upon receipt of all necessary consents to the Merger from applicable regulatory authorities.

6.    Termination.  This Plan may be terminated at any time prior to the Effective Time by written agreement of the parties hereto.

7.    Counterparts, Headings, Governing Law.  This Plan may be executed simultaneously in any number of counterparts, each of which shall be deemed an original but all of which shall constitute one and the same instrument.  The title of this Plan and the headings contained herein are for convenience of reference only and shall not be deemed a part of this Plan.  This Plan shall be governed by and construed in accordance with the laws of the State of Georgia, without regard to its conflicts of laws principles.

(signature page follows)

2

IN WITNESS WHEREOF, the parties hereto have caused this Agreement and Plan of Merger to be executed by their duly authorized officers as of the day and year first above written.

SUNTRUST MORTGAGE, INC.

By: _____

Name: Dorinna C Smith

Title: President and CEO

SUNTRUST BANK

By: _____

Name: _____

Title: _____

IN WITNESS WHEREOF, the parties hereto have caused this Agreement and Plan of Merger to be executed by their duly authorized officers as of the day and year first above written.

SUNTRUST MORTGAGE, INC.

By: _____
Name: _____
Title: _____

SUNTRUST BANK

By: _____
Name: _MARK A. CHANEY_____
Title: _VICE CHAIRMAN &_____
         CORPORATE EVP

EXHIBIT C



113
Filed and Recorded Nov-06-2015 02:21:24PM
DOC#:

*Rebecca Keaton*

REBECCA KEATON
CLERK OF SUPERIOR COURT Cobb Cty. GA.

Recording Requested By: SUNTRUST MORTGAGE, INC.
When Recorded Return To: Kimberlaine Johnson, SUNTRUST MORTGAGE, INC. 1001 SEMMES AVENUE RVW
5303, RICHMOND, VA 23224

## CORPORATE ASSIGNMENT OF SECURITY DEED

Cobb, Georgia
SELLER'S SERVICING          "LAMBERT"

MR

Date of Assignment: April 29th, 2015
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR PRIMARY
RESIDENTIAL MORTGAGE, INC. ITS SUCCESSORS AND ASSIGNS at P.O. BOX 2026, FLINT, MI 48501-2026
Assignee: SUNTRUST MORTGAGE, INC. at 1001 SEMMES AVENUE, RICHMOND, VA 23224

Executed By: IAN LAMBERT To: PRIMARY RESIDENTIAL MORTGAGE, INC.
Date of Security Deed:  10/24/2014 Recorded:  11/04/2014  in Book/Reel/Liber: 15190 Page/Folio: 5389-5413 as
Instrument No.: N/A In the County of Cobb, State of Georgia.

Property Address: 2643 SPENCERS TRACE NE, MARIETTA, GA 30062

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said
Mortgage having an original principal sum of $185,085.00 with interest, secured thereby, and the full benefit of all the
powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys
unto the said Assignee, the Assignor's interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the
terms contained in said Mortgage.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR PRIMARY RESIDENTIAL
MORTGAGE, INC. ITS SUCCESSORS AND ASSIGNS
On 5-1-2015

By:

-President-          -Vice-

**Vashti Anthony**
**Assistant Vice President**

WITNESS                                          WITNESS

COMMONWEALTH OF Virginia
COUNTY OF Richmond (City)

On  05/01/15  , before me,  Carol Moreno  , a Notary Public in and for
Richmond (City) in the State of Virginia, personally appeared  Vashti Anthony  As't Vice President, personally
known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

*Carol Moreno*
Notary Expires: 08/31/15

CAROL MORENO
Notary Public
Commonwealth of Virginia
7501227
My Commission Expires Aug 31, 2015

(This area for notarial seal)

"Exhibit D"

## Post-Petition Payment Ledger

| | |
|---|---|
| **Name:** | IAN LAMBERT |
| **Case No:** | 17-58569 |
| **Loan Number:** | |
| **Filing Date:** | 05/12/17 |
| **Completed Date:** | |
| | 03/19/20 |

| Date Received | Amount Received | Total Amount Applied | Suspense Balance | Post-Petition Due Date | Comments |
|---|---|---|---|---|---|
| 6/30/2017 | $1,328.00 | | $ 1,328.00 | | |
| 11/7/2017 | $900.00 | | $ 2,228.00 | | |
| | | $1,367.73 | $ 860.27 | 6/1/2017 | |
| 11/7/2017 | $1,367.73 | | $ 2,228.00 | | |
| | | $1,367.73 | $ 860.27 | 7/1/2017 | |
| 11/7/2017 | $1,367.73 | | $ 2,228.00 | | |
| | | $1,367.73 | $ 860.27 | 8/1/2017 | |
| 11/7/2017 | $1,367.73 | | $ 2,228.00 | | |
| | | $1,367.73 | $ 860.27 | 9/1/2017 | |
| 1/16/2018 | $1,367.00 | | $ 2,227.27 | | |
| | | $1,367.73 | $ 859.54 | 10/1/2017 | |
| 1/16/2018 | $1,467.00 | | $ 2,326.54 | | |
| | | $1,367.73 | $ 958.81 | 11/1/2017 | |
| 4/5/2018 | $2,736.00 | | $ 3,694.81 | | |
| | | $1,367.73 | $ 2,327.08 | 12/1/2017 | |
| | | $1,367.73 | $ 959.35 | 1/1/2018 | |
| 5/7/2018 | $1,368.00 | | $ 2,327.35 | | |
| | | $1,367.73 | $ 959.62 | 2/1/2018 | |
| 5/9/2018 | $1,368.00 | | $ 2,327.62 | | |
| | | $1,367.73 | $ 959.89 | 3/1/2018 | |
| 5/23/2018 | $1,368.00 | | $ 2,327.89 | | |
| | | $1,367.73 | $ 960.16 | 4/1/2018 | |
| 5/23/2018 | $289.58 | | $ 1,249.74 | | |

| Date Received | Amount Received | Total Amount Applied | Suspense Balance | Post-Petition Due Date | Comments |
|---|---|---|---|---|---|
| 6/8/2018 | $1,412.00 | | $ 2,661.74 | | |
| | | $1,367.73 | $ 1,294.01 | 5/1/2018 | |
| 7/11/2018 | $1,412.00 | | $ 2,706.01 | | |
| | | $1,411.83 | $ 1,294.18 | 6/1/2018 | |
| | | $1,004.60 | $ 289.58 | | Applied to consent order |
| 9/28/2018 | $1,572.00 | | $ 1,861.58 | | |
| | | $1,411.83 | $ 449.75 | 9/1/2018 | |
| 9/29/2018 | $1,412.00 | | $ 1,861.75 | | |
| | | $1,412.00 | $ 449.75 | | Applied to consent order |
| | | $149.99 | $ 299.76 | | 1st Stip Payment - 09/15/18 |
| 10/5/2018 | $88.20 | | $ 387.96 | | |
| 10/15/2018 | $1,572.00 | | $ 1,959.96 | | |
| | | $1,411.83 | $ 548.13 | 10/1/2018 | |
| | | $149.99 | $ 398.14 | | 2nd Stip Payment - 10/15/18 |
| 11/16/2018 | $1,572.00 | | $ 1,970.14 | 11/1/2018 | |
| | | $1,411.83 | $ 558.31 | | |
| | | $149.99 | $ 408.32 | | 3rd Stip Payment - 11/15/18 |
| 12/19/2018 | $1,572.00 | | $ 1,980.32 | 12/1/2018 | |
| | | $1,411.83 | $ 568.49 | | |
| | | $149.99 | $ 418.50 | | 4th Stip Payment - 12/15/18 |
| 1/22/2019 | $1,572.00 | | $ 1,990.50 | 1/1/2019 | |
| | | $1,411.83 | $ 578.67 | | |
| | | $149.99 | $ 428.68 | | 5th Stip Payment - 01/15/19 |
| 2/22/2019 | $1,572.00 | | $ 2,000.68 | | |
| | | $149.99 | $ 1,850.69 | | 6th Stip Payment - 02/15/19 |
| 3/7/2019 | | $511.05 | $ 1,339.64 | | Check back to Debtor |
| 3/22/2019 | $1,572.00 | | $ 2,911.64 | | |
| | | $1,411.83 | $ 1,499.81 | 2/1/2019 | |

| Date Received | Amount Received | Total Amount Applied | Suspense Balance | Post-Petition Due Date | Comments |
|---|---|---|---|---|---|
|  |  | $149.99 | $ 1,349.82 |  | 7th Stip Payment - 03/15/19 |
| 3/25/2019 | $511.05 |  | $ 1,860.87 |  |  |
|  |  | $1,411.83 | $ 449.04 | 3/1/2019 |  |
| 4/24/2019 |  | $289.58 | $ 159.46 |  | Check back to Debtor |
| 5/6/2019 | $1,572.00 |  | $ 1,731.46 |  |  |
|  |  | $1,411.83 | $ 319.63 | 4/1/2019 |  |
|  |  | $149.99 | $ 169.64 |  | 8th Stip Payment - 04/15/19 |
| 5/28/2019 | $1,572.00 |  | $ 1,741.64 |  |  |
|  |  | $1,411.83 | $ 329.81 | 5/1/2019 |  |
|  |  | $149.99 | $ 179.82 |  | 9th Stip Payment - 05/15/19 |
|  |  | $20.05 | $ 159.77 |  | Applied to consent order to pay consent in full |
| 6/26/2019 | $1,439.00 |  | $ 1,598.77 |  |  |
|  |  | $1,438.02 | $ 160.75 | 6/1/2019 |  |
| 8/9/2019 | $2,878.00 |  | $ 3,038.75 |  |  |
|  |  | $1,438.02 | $ 1,600.73 | 7/1/2019 |  |
|  |  | $1,438.02 | $ 162.71 | 8/1/2019 |  |
| 9/30/2019 | $1,439.00 |  | $ 1,601.71 |  |  |
|  |  | $1,438.02 | $ 163.69 | 9/1/2019 |  |
| 11/5/2019 | $1,439.00 |  | $ 1,602.69 |  |  |
|  |  | $1,438.02 | $ 164.67 | 10/1/2019 |  |
| 1/13/2020 | $1,439.00 |  | $ 1,603.67 |  |  |
|  |  | $1,438.02 | $ 165.65 | 11/1/2019 |  |
| 1/24/2020 |  | -$44.10 | $ 209.75 |  | Escrow reversal |
| 2/19/2020 | $0.80 |  | $ 210.55 |  | Balance received from trustee suspense |
| 3/16/2020 | $1,500.00 |  | $ 1,710.55 |  |  |
|  |  | $1,438.02 | $ 272.53 | 12/1/2019 |  |
|  |  |  | $ 272.53 |  |  |

**Current Post-Petition Due Date: 1/1/2020**